UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
ISHOW.COM, INC.,                        )        No. C15-1550RSL
                                        )
                    Plaintiff,          )
        v.                              )
                                        )        ORDER DENYING PLAINTIFF'S
LENNAR CORPORATION, *et al.*,           )        MOTION FOR SUMMARY
                                        )        JUDGMENT
                    Defendants.         )
_____)

   This matter comes before the Court on "Plaintiff's Motion for Summary Judgment." Dkt. # 31. Plaintiff requests a declaration that, as a matter of law, it has superior rights to the NEXTGEN mark when used in connection with residential real estate development and financing services.

   Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine dispute of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp.,

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits in the light most favorable to defendant and having heard the arguments of counsel, the Court finds as follows:

In order to prevail on its priority claim, iShow must first establish that it has a protected interest, *i.e.*, a trademark right, in the name NEXTGEN when used in connection with residential real estate development and financing services. To do so, iShow must establish that Lennar's use of the NEXTGEN mark is likely to cause consumer confusion as to the source, sponsorship, or approval of its goods or services.[1] The touchstone for determining whether iShow has a protectable ownership interest in a particular market is likelihood of consumer confusion: if

---

[1] iShow cannot rely on any presumption that may arise from the registration of the NEXTGEN mark with the United States Patent and Trademark Office ("PTO") because the registration constitutes *prima facie* evidence of a protected interest only with respect to the goods specified in the registration. 15 U.S.C. § 1057(b) and § 1115(a). iShow registered under trademark class 35, which encompasses the activities iShow was pursuing when it applied for and registered its mark, namely product demonstration of goods provided by the residential construction and consumer electronics industries to enable customers to conveniently view and purchase the goods. Dkt. # 37 at 12-13. Lennar uses the NEXTGEN mark in the residential homebuilding and financing markets. iShow's registration, standing alone, does not establish a protectable trademark right in those markets.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                -2-

there is no such likelihood, "classic trademark law mandates that it is possible that the exact same marks can peacefully co-exist on different goods and services." 4 McCarthy on Trademarks and Unfair Competition § 24:11.

The "related goods" and "natural expansion" tests discussed by the parties are simply applications of the likelihood of confusion analysis in particular factual situations. Id. at § 24:6 and § 24:20. See Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1050-51 (9th Cir. 1999) (favorably citing to the "natural expansion" test as a means of determining whether there was a likelihood of consumer confusion despite differences in product lines); Carnival Brand Seafood Co. v. Carnival Brands, Inc., 187 F.3d 1307, 1311 (11th Cir. 1999) (noting that the existence of confusion regarding the source of goods "is another way of saying that the market for [the junior user's] products would have been within the realm of natural expansion for [the senior user]."). Where goods are closely related (such as pancake batter and pancake syrup) or where a senior user would normally and reasonably be expected to expand into another product line (from bicycle tires to auto tires, for example), the evidence may support a finding that, "at the time the junior user began use, purchasers would have been likely to be confused as to source or as to sponsorship, affiliation or connection" even if there were no actual prior use in the new market by the senior user. 4 McCarthy on Trademarks and Unfair Competition § 24:20. If that finding can be made as a matter of law in this case, iShow would be entitled to a declaration of priority in the residential homebuilding and financing markets and could preclude Lennar from using the mark in iShow's natural zone of expansion.

"The test for likelihood of confusion [in the Ninth Circuit] is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Dreamwerks Prod. Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998). Making that determination generally requires consideration of the eight Sleekcraft factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                    -3-

marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. See M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1980 (9th Cir. 2005) (citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir.1979)).[2] Some Sleekcraft factors "are much more important than others, and the relative importance of each individual factor will be case specific." Brookfield, 174 F.3d at 1054. In this case, the first factor compels the denial of iShow's motion.

The strength of a mark is a function of both its conceptual and commercial strengths. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir. 2000). "[A] mark's conceptual strength is proportional to the mark's distinctiveness:" the more distinctive the mark, the stronger it is. M2 Software, 421 F.3d at 1080. Marks that are fanciful or arbitrary – such as CLOROX bleach and OLD CROW whiskey– use words with no pre-established meaning or that have no connection with the goods and services being offered. Such marks are deemed inherently distinctive. 2 McCarthy on Trademarks and Unfair Competition § 11:4 and § 11:8. Because of their oddity, they are presumed to achieve customer recognition of the link between goods and source as soon as they are used: no additional evidence of secondary meaning in the marketplace is required. Id. at § 11:4. Suggestive marks – those that suggest some aspect of the goods or services without describing them – are also considered inherently distinctive. J. Thomas McCarthy points out that the line between arbitrary and suggestive marks is sometimes hard to discern. "For example, it could be argued that a mark like GREYHOUND for a bus line

---

[2] As noted by the Eleventh Circuit, the likelihood of confusion test is modified somewhat when applied to priority determinations because the court is looking backwards to the date on which the junior user began using the mark. "Once priority in the use of the mark for a particular class of goods or services has been established, then it is necessary to perform the likelihood-of-confusion test as of the current time and as between the plaintiff's current products . . . and the allegedly infringing products of the defendant to determine whether the plaintiff ultimately prevails in a trademark infringement litigation." Carnival Brand Seafood, 187 F.3d at 1311 n.4.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                    -4-

is arbitrary" or "that GREYHOUND suggests speed and sleekness" of the services offered and is therefore suggestive. 2 McCarthy on Trademarks and Unfair Competition § 11:12.

iShow contends that its NEXTGEN mark is suggestive and is therefore inherently distinctive without the need for evidence that its mark has achieved secondary meaning in the market. Lennar argues, however, that NEXTGEN is merely descriptive of the goods and services iShow offers.

> Deciding whether a mark is distinctive or merely descriptive "is far from an exact science" and is "a tricky business at best." Banff, Ltd. v. Federated Dep't Stores, Inc., 841 F.2d 486, 489 (2d Cir.1988); see also 2 McCarthy on Trademarks § 11:2 ("As with tonal shade variations in the colors of the visible spectrum of sunlight, the categories of the trademark spectrum often become difficult to distinguish at the boundaries."). Some cases pose an easy conclusion that a mark is merely descriptive, as for example would be the case if a restaurant chain sought a trademark in a name such as "Delicious Foods," or a taxicab company sought a trademark in the name "Reliable Cab," or a clothing company in a name such as "Ready Wear." . . . We have said that the "primary criterion" for distinguishing between a suggestive and a descriptive mark "is the imaginativeness involved in the suggestion, that is, how immediate and direct is the thought process from the mark to the particular product." Self–Realization Fellowship Church v. Ananda Church of Self–Realization, 59 F.3d 902, 911 (9th Cir.1995) (quotation omitted). A mark is suggestive "if 'imagination' or a 'mental leap' is required in order to reach a conclusion as to the nature of the product being referenced." Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc., 198 F.3d 1143, 1147 n. 3 (9th Cir.1999). By contrast, a mark is descriptive if it "define[s] a particular characteristic of the product in a way that does not require any exercise of the imagination." Yellow Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927 (9th Cir.2005).

Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1197-98 (9th Cir. 2009). The Court finds that iShow has not shown that its mark is suggestive or otherwise inherently distinctive as a matter of law.

While there is certainly evidence that would support a finding in iShow's favor on this issue (primarily the Patent and Trademark Office's willingness to register hundreds of NEXTGEN marks without requiring evidence of secondary meaning), there is significant

evidence that would support a finding that the mark is descriptive. The conceptual strength of a mark must be evaluated in the context of the goods or services that it identifies. Rodeo Collection, Ltd. v. W. Seventh, 812 F.2d 1215, 1218 (9th Cir. 1987).[3] iShow uses NEXTGEN with the production and display of demonstration homes, as part of the mark NEXTGEN HOME EXPERIENCE. In that context, the mark immediately conveys to potential customers that the home they are about to tour contains forward-looking, integrated, and/or advanced components that would be considered "next generation."[4] If another demonstration home company called itself "MOD HOME EXPERIENCE" or "ITTY BITTY HOME EXPERIENCE," it would likewise be using its mark to describe the characteristics and qualities of its productions to potential customers. Very little imagination on the buyer's part is necessary to absorb the message iShow is conveying regarding what they can expect to find in a NEXTGEN demonstration home. See 2 McCarthy on Trademarks and Unfair Competition § 11:17 ("Since each tangible object carries with it a 'psychic load' of intangible consumer psychological expectations about the product, a mark could be 'descriptive' of the product itself or those intangible expectations, or both. Self-laudatory or 'puffing' marks are regarded as a condensed form of describing the character or quality of the goods.") (internal footnotes omitted). Droves of other vendors have likewise adopted the NEXTGEN mark for their goods and services, ranging from NEXTGEN FOOT CARE to NEXTGEN DIGITAL, presumably because "when the mark

---

[3] The mark BRILLIANT, for example, "may be 'descriptive' on diamonds, 'suggestive' on furniture polish, and 'arbitrary' on canned applesauce." 2 McCarthy on Trademarks and Unfair Competition § 11:64.

[4] To the extent iShow relies on the fact that it used a shortened version of "next generation" as its mark, the distinction requires no leap of imagination to get from one to the other. In fact, iShow's marketing materials from the time blurred the mark and the descriptive adjective by touting itself as "the Place to Showcase Next Generation Building Products," advertising upcoming demonstrations as "the 'NEXT' in NEXT-Generation building," and offering "next generation solutions to our injured veterans." Dkt. # 32-9 at 2.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT                -6-

is seen on the goods or services, it immediately conveys information about their nature" to potential customers. Lahoti, 586 F.3d at 1201. On the existing record, iShow has failed to establish inherent distinctiveness as a matter of law.

If NEXTGEN is merely descriptive, iShow would have the burden of proving that the designation has achieved trademark status in the minds of potential customers. Trademark protection for descriptive marks "is extended only in recognition of consumer acceptance and recognition of such marks as denoting only one seller or source." 2 McCarthy on Trademarks and Unfair Competition § 11:25. Although the connection between mark and source is assumed in the case of arbitrary, fanciful, and suggestive marks, a claimant must affirmatively establish the secondary meaning of a descriptive mark. In the absence of secondary meaning, there is no protectable trademark interest. Because iShow relied solely on its contention that the NEXTGEN mark is suggestive, it made no effort to show that the mark had, as of 2011, acquired secondary meaning as an indication of source in any market. Thus, there is a genuine issue of fact regarding whether iShow had a protectable trademark interest when Lennar began using the NEXTGEN mark in or around 2011.

Because iShow has failed to establish a trademark interest as a matter of law, the Court need not consider the commercial strength of the mark or the other Sleekcraft factors. Plaintiff's request for a determination of priority (Dkt. # 31) is DENIED.

Dated this 17th day of March, 2017.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT            -7-