UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
ISHOW.COM, INC.,                    )
                                    )   No. C15-1550RSL
              Plaintiff,            )
                                    )
     v.                             )
                                    )   ORDER DENYING DEFENDANTS'
LENNAR CORPORATION, *et al.*,       )   MOTION FOR SUMMARY
                                    )   JUDGMENT
              Defendants.           )
_____)

    This matter comes before the Court on "Defendants Lennar Corporation and Lennar Pacific Properties Management, Inc.'s Motion for Summary Judgment." Dkt. # 41. The parties both claim the right to use the mark NEXTGEN (or NEXT GEN) in connection with residential construction and real estate development services. Defendants (hereinafter, "Lennar") seek a summary determination that iShow.com, Inc.'s trademark claims are barred by the doctrine of laches.

    Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine dispute of material fact (Fed. R. Civ. P. 56(c)). Once the

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits in the light most favorable to plaintiff and having heard the arguments of counsel, the Court finds as follows:

Since the early 2000's, iShow has been using the NEXTGEN mark in connection with the construction of show homes in which to display innovative, green, or forward-looking construction techniques and consumer electronics. Toward the end of that decade, iShow made efforts to use its mark in connection with the design and sale of residential homes, but the venture ended before a single home was sold. In the summer of 2011, Lennar filed an application to register a NEXTGEN mark for use in real estate development, management, and financing. Shortly thereafter, iShow sent Lennar an email expressing concern that Lennar's proposed use of the NEXTGEN mark would cause consumer confusion. Nevertheless, Lennar began selling homes under the disputed mark in October 2011. iShow filed a formal objection to Lennar's trademark application with the United States Patent and Trademark Office ("PTO") in March 2012, but withdrew the objection five months later. By that point, Lennar had sold 175 homes

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT                    -2-

under the NEXTGEN mark. Lennar's mark was registered on February 5, 2013. Lennar has spent millions of dollars advertising its NEXTGEN mark in connection with building homes conducive to multi-generational living. It has sold more than 4,200 homes with gross sales exceeding $1.77 billion.

The Lanham Act does not contain an explicit statute of limitations (Jarrow Formulas, Inc. V. Nutrition Now, Inc., 304 F.3d 829, 836 (9th Cir. 2002)), but laches is a recognized equitable defense to a Lanham Act claim (see, e.g., Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc., 559 F.3d 985, 989 (9th Cir. 2009)). The underlying justification for the defense in the intellectual property context was stated long ago by Judge Learned Hand:

> It must be obvious to every one familiar with equitable principles that it is inequitable for the owners of a copyright, with full notice of an intended infringement, to stand inactive while the proposed infringer spends large sums of money in its exploitation, and to intervene only when his speculation has proved a success. Delay under such circumstances allows the owner to speculate without risk with the other's money; he cannot possibly lose, and he may win.

Haas v. Leo Feist, Inc., 234 F. 105, 108 (S.D.N.Y. 1916). Laches is a complete defense to a trademark claim if plaintiff has unreasonably delayed in filing suit and defendant has suffered prejudice. Danjaq LLC v. Sony Corp., 263 F.3d 942, 951 (9th Cir. 2001). In evaluating the delay element, courts consider the limitations period for the analogous action at law: if plaintiff filed suit after that period expired, a presumption of unreasonable delay arises. Jarrow Formulas, 304 F.3d at 835-36.

It is undisputed that iShow knew of Lennar's proposed use of the NEXTGEN mark and believed that the use was infringing no later than September 16, 2011, when iShow contacted Lennar via email. This suit was not filed until September 29, 2015, more than four years later.[1]

---

[1] The longest limitations period that may apply in this case is Nevada's four-year statute of limitations for deceptive trade practices.

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT                 -3-

Thus, there is a presumption that plaintiff unreasonably delayed in filing suit. iShow argues, however, (a) that laches does not apply because defendant has unclean hands, (b) that its opposition to Lennar's registration application before the PTO precludes a finding of laches, and (c) that time spent communicating with Lennar about its use and possible settlement should not be included in the calculation. Each argument is considered below.

**(a) Willful Infringement**

"Over the past eighty-five years, various courts have held that laches does not bar a suit against a deliberate infringer. This principle appears to be based on the equitable maxim that 'he who comes into equity must come with clean hands.'" Danjaq, 263 F.3d at 956. Thus, if Lennar were a "deliberate pirate" or a "naked infringer," its wrong would not be excused simply because iShow delayed in filing suit. Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354, 372 (9th Cir. 1947) (quoting Haas, 234 F. at 108, and Window Glass Mach. Co. v. Pittsburgh Plate Glass Co., 284 F. 645, 650 (3d Cir. 1922)). In order to establish the willfulness exception to laches, iShow must demonstrate that Lennar acted "with knowledge that [its] conduct constitutes [trademark] infringement." Danjaq, 263 F.3d at 957-58 (quoting Columbia Pictures Television v. Krypton Broad., 106 F.3d 284, 293 (9th Cir. 1997)).

Taking the evidence in the light most favorable to iShow, there is a genuine issue of fact regarding whether Lennar adopted the NEXTGEN mark with knowledge that its use in the residential construction and real estate development markets would infringe iShow's intellectual property and/or that Lennar pirated the mark in order to exploit the goodwill iShow had achieved in the relevant market. iShow points out that Lennar was aware of iShow's use of the NEXTGEN mark on innovative and forward-looking demonstration homes and that it told Lennar that the proposed use of the NEXTGEN mark in the residential housing market would constitute infringement. Lennar may have reasonably doubted iShow's declaration of infringement, however. iShow's mark is registered for use solely in the demonstration home

market, and iShow has never claimed sole possession of the mark for all purposes. NEXTGEN (or the substantially similar mark NEXT GEN) has been registered hundreds of times for use in a wide variety of industries and markets.[2] Thus, when iShow first made its claim of infringement, it was asserting a right to extend the reach of its mark into a new, albeit related, field. A claim of infringement in this context would be successful only if Lennar's use of the mark in the residential real estate development context "creates a likelihood that the consuming public will be confused as to who makes what product." Brother Records, Inc. v. Jardine, 318 F.3d 1036, 1053-54 (9th Cir. 1999).[3] If there is no such likelihood, "classic trademark law mandates that it is possible that the exact same marks can peacefully co-exist on different goods and services." 4 McCarthy on Trademarks and Unfair Competition § 24:11.

Lennar did not necessarily have to credit iShow's effort to extend its mark into a separate but related market. It may have performed an infringement analysis and reasonably concluded that iShow was overreaching. Or it may have relied on the fact that iShow withdrew its opposition to Lennar's trademark application as a concession that Lennar's use of the mark did not infringe. Or it may have presumed that the PTO's willingness to register the NEXTGEN mark for use in the real estate development market established the mark's validity alongside iShow's pre-existing mark. All of these inferences are possible based on the existing record, but they are not compelled as a matter of law. For whatever reason, Lennar has not provided any

---

[2] The Court has considered the Declaration of Christopher E. Hawk (Dkt. # 36) and the attached exhibits, rather than counsel's summary contained in the reply memorandum.

[3] Making that determination generally requires consideration of the eight Sleekcraft factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. See M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1980 (9th Cir. 2005) (citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir.1979)). As discussed in the "Order Denying Plaintiff's Motion for Summary Judgment," of even date, plaintiff has not established a likelihood of confusion in the residential real estate development market as a matter of law.

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT                -5-

evidence regarding its beliefs or intent at the time it adopted the mark in 2011. It makes plausible assertions for why a company building multi-generational housing might chose a mark with GEN in it and scoffs at the suggestion that iShow's mark had acquired good will and/or secondary meaning in the residential housing market. But there is no declaration from company decision-makers or explanation of the process that led Lennar to adopt a mark which, according to another home builder, had already established in iShow a "brand for quality, and the brand's association with the latest in home-design, building materials, and in-home technologies." Dkt. # 33 at ¶ 5. This absence of facts and evidence, all of which is within Lennar's possession, distinguishes it from many of the laches cases in which the determination regarding willfulness was made as a matter of law. See, e.g., Danjaq, 263 F.3d at 958 (alleged infringer described the steps it took to avoid the possibility of infringement); Fitbug Ltd. v. Fitbit, Inc., 78 F. Supp.3d 1180, 1195-96 (N.D. Cal. 2015) (alleged infringer explained the timing and circumstances regarding the selection of the mark and submitted evidence regarding it contemporaneous intent and beliefs). In the absence of an affirmative statement regarding Lennar's intent at the time it adopted the NEXTGEN mark or other evidence that overcomes the plausible inference of willfulness raised by the existing record, Lennar has not established its laches defense as a matter of law.

**(b) Opposition in PTO Proceedings**

Laches is, as Judge Learned Hand explained, a doctrine that prevents a claimant from standing inactive while an infringer exploits intellectual property, only to lay claim to the benefits once the efforts of the competitor have been successful. Haas, 234 F. at 108. One of the factors the Ninth Circuit uses to determine whether a trademark owner's delay in filing suit was unreasonable is whether plaintiff was diligent in enforcing the mark. Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n, 465 F.3d 1102, 1108 (9th Cir. 2006). A number of courts have held that filing a formal opposition to a trademark application before the

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT          -6-

PTO defeats any inference that the delay was caused by a lack of diligence or that plaintiff was sleeping on its rights. See, e.g., Gaudreau v. Am. Promotional Events, Inc., 511 F. Supp.2d 152, 158-59 (D.D.C. 2007) (collecting cases). The Court agrees that opposition before an administrative agency should be acknowledged when considering a laches defense, given the equitable nature and purposes of the defense, the formality of the proceeding, the plaintiff's efforts, the fact that the alleged infringer could not possibly have believed that plaintiff had abandoned its infringement claim while the opposition was pending, and the judicial interest in avoiding duplicative proceedings. In this case, iShow's opposition to Lennar's trademark application was short-lived, however. It was withdrawn with prejudice five months after it was filed.[4] The Court finds that the period of unreasonable delay should therefore be reduced by the five months in which plaintiff was diligently enforcing its trademark, but that the abandoned objections do not act as a talisman as to other periods of delay. Danjaq, 263 F.3d at 953 (finding that to the extent prior litigation "stopped the clock on laches, it was only momentary, and the clock began running again" when the lawsuit was dismissed).

      The critical issue then becomes which statute of limitations guides the laches analysis. iShow argues that the four-year limitations period Nevada law provides for deceptive trade practices claims guides the laches analysis because Nevada has the most significant relationship to this dispute. Lennar takes no position on the choice of law issue, stating that iShow's claims are untimely regardless of whether the Court uses a three or four year limitations period as a reference in this matter. The Court disagrees. iShow filed this lawsuit four years and two weeks after the undisputed date on which it was aware of Lennar's alleged infringement. Subtracting from the period of delay the five months in which iShow maintained its objections before the PTO means that the difference between a three year limitations period (which gives rise to a

---

[4] Lennar points out that the parties in Gaudreau engaged in a trademark application battle right up until the time that suit was filed, five years after the dispute arose. Dkt. # 46 at 9.

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT      -7-

presumption that laches applies and is a bar to suit) and a four year limitations period (which gives rise to a strong presumption that laches in inapplicable) is dispositive. Jarrow Formulas, 304 F.3d at 837. In the absence of any meaningful argument from Lennar on this point, the Court will assume, for purposes of this motion that the Nevada statute applies and that laches is inapplicable.

### (c) Informal Opposition and Settlement Negotiations

iShow contends that, in addition to the five months spent contesting Lennar's trademark application before the PTO, the Court should exclude from the delay calculation all of the time in which iShow was attempting to resolve the dispute outside of formal litigation (a total of thirteen months). Dkt. # 44 at 14. Ninth Circuit law does not support such an expansive view of diligence. In Danjaq, the person claiming to hold the senior copyright repeatedly notified the alleged infringer of his claim, even filing a corrected copyright registration and taking out full-page advertisements notifying the world that his rights were being infringed. "Despite this flurry of public accusations, [the claimant] took no legal action," and the communications were deemed insufficient to stop the clock on laches. 263 F.3d at 949, 953.

> "Laches is based on the plaintiff's delay in beginning litigation, not on the information a defendant has regarding a claim." Jackson [v. Axton, 25 F.3d 884, 889 (9th Cir. 1994)]; accord Nealey v. Transp. Maritima Mexicana, S.A., 662 F.2d 1275, 1280 n.6 (9th Cir. 1980) ("[T]he delay, which the defense (of laches) contemplates, is not delay in bringing claims to the attention of the defendant. It is . . . delay on the part of the plaintiff in instituting litigation on his claims . . . ." (internal quotation marks and citations omitted; some alterations in original)).

Danjaq, 263 F.3d at 953. Absent some indication that Lennar misled iShow into believing it would cease its use of the NEXTGEN mark or otherwise fraudulently induced iShow to refrain from filing suit, iShow's informal efforts to resolve this dispute do not preclude a finding of laches.

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT                    -8-

For all of the foregoing reasons, Lennar's motion for summary judgment regarding laches (Dkt. # 41) is DENIED. Because Lennar has not established unreasonable delay as a matter of law, the Court has not considered the issue of prejudice.

Dated this 17th day of March, 2017.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT                     -9-