UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
ISHOW.COM, INC.,           )
                                    )        No. C15-1550RSL
                                    )
              Plaintiff,    )
        v.                               )
                                    )        ORDER GRANTING IN PART
LENNAR CORPORATION, *et al.*,  )        PLAINTIFF'S MOTIONS IN LIMINE
                                    )
            Defendants.  )
_____)

This matter comes before the Court on plaintiff's "Motions in Limine to Exclude Evidence." Dkt. # 64. Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

**(1) Individuals and Groups Named in Pretrial Statement**

Defendants' pretrial statement was served on plaintiff on June 22, 2017, and identified nine potential witnesses (Jeremy Parness, Alan Jones, Kim Ashbaugh, Dan Raajtes, Carter Miles, David Collins,[2] Colbie Brazell Campbell, Lisa Shereen Zamaludin, and Janice Spousta -

---

[1] The issues raised can be decided on the papers submitted. Defendants' request for oral argument is DENIED.

[2] Defendants argue that they could not have disclosed Mr. Collins as a potential witness in their initial disclosures because his testimony did not become relevant until plaintiff asserted a trademark infringement claim and sought disgorgement of Lennar's profits. Rule 26(e) requires supplementation of the initial disclosures when the responding party realizes the disclosure was incomplete in some material

ORDER GRANTING IN PART
PLAINTIFF'S MOTIONS IN LIMINE

Hinshaw) and three categories of witnesses ("Third-Party Relators," "Third-Party NEXT GEN homeowners," and "Representative of DR Horton") who had not previously been disclosed. Dkt. # 65-2 at 18-23. On July 9, 2017, fifteen days before trial is scheduled to start, defendants narrowed their witness list to eight named individuals, only two of whom had been identified prior to June 22, 2017.

Rule 26(a)(1) requires each party to disclose the names and contact information of individuals who they may use to support their claims or defenses. Rule 26(e)(1) requires timely supplementation if a disclosing party learns that its disclosure is incomplete and the additional information has not otherwise been made known to the receiving party. The fact that plaintiff may have been aware of the existence of one or more of the individuals defendants belatedly identified as witnesses is irrelevant in this context. Defendants gave no indication that they intended to rely on their testimony in this litigation, which is the primary value of the disclosures required by Rule 26. Plaintiffs were deprived of guidance as it crafted its discovery plan, served interrogatories, and noted depositions. That plaintiff took a "bare-bones, 'no frills' approach" to discovery (Dkt. # 79 at 5) reflects strategic choices based on surrounding facts, including the fact that defendants had identified very few witnesses. Moreover, the prejudice caused by the failure to disclose is evident from defendants' descriptions of the witnesses' anticipated trial testimony. For example, plaintiff has not had a chance to question Ms. Spousta-Hinshaw regarding Lennar's selection of the NEXT GEN mark and the basis for her opinions regarding consumer confusion. Plaintiff should not be required to probe these issues for the first time before the jury.

Defendants have not shown that the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c). The nine individuals and three groups disclosed for the first time

---

respect. The disgorgement claim had been part of this case for exactly a year before Mr. Collins was disclosed. He will not be permitted to testify.

ORDER GRANTING IN PART
PLAINTIFF'S MOTIONS IN LIMINE        -2-

on June 22, 2017, will not be permitted to testify at trial.[3]

**(2) Documents Not Previously Produced**

Along with their pretrial statement, defendants supplemented their responses to requests for production, producing thousands of documents that had never before been disclosed. Plaintiff seeks exclusion of documents Bates stamped LENNAR_003689 - LENNAR_010853, only some of which appear on defendants' trial exhibit list as Exs. 543-825. Dkt. # 65-2 at 27-45.[4] The Court limits its consideration to those documents which were disclosed in the pretrial statement: if a document was not listed in the pretrial statement, it may not be used at trial for any purpose other than impeachment.

Defendants argue that this supplemental production (which was provided long after discovery had closed, four days before the motions in limine were due, and one month before trial) was substantially justified and/or harmless. Plaintiff served requests for production in July 2016. Defendants responded with objections, but produced almost 3,700 pages in November 2016. Dkt. # 79-1 at ¶ 7. It turns out that there were troves of emails that had not been searched, collected, and reviewed. Although defense counsel realized in April 2017 (shortly after the trial date for this case was set) that there were unreviewed, potentially responsive documents available, defendants made no mention of the documents until June 22, 2017.[5] Even if the initial

---

[3] Defendants' attempt to foist the blame for this situation onto plaintiff is, frankly, galling. Defendants first disclosed their intent to call these individuals at trial on June 22, 2017, after discovery had closed, four days before the motions in limine were due, and one month before trial. How and when plaintiff was supposed to seek leave of Court to reopen discovery – much less conduct that discovery – is unclear. Given the circumstances of this case, there is no reason why plaintiff should have the burden of remedying a situation defendants unilaterally created.

[4] In their response memorandum, defendants indicate that they have amended their pretrial statement and included as exhibits only 220 of the documents contained in the supplemental production.

[5] Defendants fault plaintiff for not filing a motion to compel and/or conducting depositions to ensure that the production was complete. But, according to counsel's declaration, not even he knew the

ORDER GRANTING IN PART
PLAINTIFF'S MOTIONS IN LIMINE                -3-

1 failure to locate all responsive documents were excusable (and on this record, it is not), there is
2 no possible justification for the failure to disclose the existence of these documents for two
3 months while the trial date approached.[6] Counsel's "ethical obligations" to the client cannot
4 justify defendants' leisurely review of the documents. The documents were covered by the
5 Protective Order entered in this litigation, and every day defense counsel spent evaluating
6 relevance and/or privilege deprived plaintiff's counsel of the chance to evaluate and respond to
7 the new evidence. Dkt. # 79-1 at ¶ 17.

8     Defendants argue that the late production is harmless because the June 22nd disclosure
9 gave plaintiff thirty days to review the new documents before trial is scheduled to begin.
10 Defendants ignore the fact that they took two months to review the recently-discovered
11 documents before deigning to reveal their existence, much less provide copies, to opposing
12 counsel. There was a three month lull in the case management deadlines when plaintiff may have
13 had an opportunity to digest the new documents and seek any necessary follow-up discovery.
14 Plaintiff has lost that opportunity because defendants waited until the parties were exchanging
15 pretrial statements, drafting evidentiary motions, and preparing for trial to reveal the thousands
16 of pages of documents that had been discovered in April. The failure to timely disclose is not
17 harmless.

18     Defendant also argues that some of the documents it disclosed on June 22, 2017, were not
19 new because (a) they fall within the categories of documents listed in defendants' initial
20 disclosures, (b) they are publicly available documents related to the 2012 USPTO proceedings,
21 or (c) they were emails between the parties. The first argument is unpersuasive. The categories

---

production was deficient until April 2017, long after the discovery-related motions deadline had passed.

[6] The Court resolved the summary judgment motions in this case on March 17, 2017, and issued an amended case management schedule setting trial for July 24, 2017. If discovery needed to be reopened, defendants had ample time to bring the new documents to plaintiff's and the Court's attention.

ORDER GRANTING IN PART
PLAINTIFF'S MOTIONS IN LIMINE     -4-

of documents identified in the initial disclosures help guide discovery. After reviewing the categories, plaintiff served requests for production designed to obtain copies of the actual documents (not just a description of types of documents). Defendants updated their response to the document requests on June 22, 2017: the fact that those documents fall within the categories identified at the beginning of the case does not excuse the delay in production. With regards to the second and third arguments, defendants have the burden of proving that their failure to timely produce was harmless. Simply asserting that plaintiff "must have" copies of unidentified PTO documents or emails does not satisfy that burden. The Court's starting presumption, based on the existing record, is that none of the documents produced on June 22, 2017, may be used at trial. If defendants believe that plaintiff had a particular document prior to that date and intend to use the document at trial, they shall bring the matter to the Court and plaintiff's attention prior to offering the document and out of the presence of the jury.

**(3) Advice of Counsel**

The attorney-client privilege cannot be used as both a sword and a shield. Having refused to disclose any opinions or advice of counsel regarding the legal implications of adopting the NEXT GEN mark and having confirmed that they are not asserting that they relied on the advice of counsel as a defense to plaintiff's infringement claims, defendants will not be permitted to offer such opinions at trial. They may, however, present evidence other than advice of counsel regarding why they chose the NEXT GEN mark and the nature and scope of the investigation they performed when determining whether the use of the mark in the residential real estate development and financing services industry would cause consumer confusion.

**(4) Evidence of Use of NEXT GEN Mark in Unrelated Fields**

Plaintiff seeks to exclude evidence of third-party uses of the NEXT GEN mark in unrelated industries and/or markets on the ground that it is irrelevant in determining the mark's strength. While there is some case law to support this argument (M2 Software, Inc. v. Madacy

Entm't, 421 F.3d 1073 (9th Cir. 2005); Eclipse Assoc. Ltd. v. Data Gen. Corp., 894 F.2d 1114, 1119 (9th Cir. 1990)), there is no reason to believe that the Ninth Circuit has made a one-size-fits-all relevance determination. The issues in this case are whether plaintiff has a valid, protectable mark and whether, at the time defendants began using the NEXT GEN mark in the residential homebuilding and financial markets, consumers would likely have been confused as to source or affiliation. The validity and strength of plaintiff's mark must be evaluated, and defendants will be permitted to offer evidence that "next gen" is essentially an adjective that describes the nature of the goods and services offered. In the circumstances of this case, evidence that a wide array of goods and services are labeled "next gen" or "next generation" supports the argument that the term is merely descriptive. In addition, consideration of other Sleekcraft factors (such as proximity of the goods and likelihood of expansion) may be informed by evidence that the USPTO has determined that the mark can peacefully co-exist on related goods without risking consumer confusion. While it is undoubtedly true that evidence of third-party use of the mark in a closely related market would be most persuasive, evidence of third-party use in other markets is at least relevant to the issue of consumer confusion. Plaintiff has not shown that the admission of such evidence would be unduly prejudicial.

**(5) Dismissal of USPTO Opposition "With Prejudice"**

The Court has already determined that plaintiff's voluntary withdrawal of its objections to defendants' registration application before the USPTO does not preclude litigation of plaintiff's priority claim. To the extent the USPTO proceedings are relevant to the laches defense, defendants will be permitted to offer evidence that plaintiff withdrew the objections it had raised, including a copy of the relevant PTO documents. Any emphasis on the fact that the withdrawal was "with prejudice" is unwarranted, however, and will simply confuse the jury. Defendants shall not, therefore, reiterate through testimony or argument that the withdrawal was with prejudice.

**(6) Consumer Confusion**

Plaintiff seeks to preclude defendants from arguing (or putting on evidence) that consumers were not confused by their use of the NEXT GEN mark. Consumer confusion is a key issue in this case. Defendants shall be required to establish a foundation for any evidence of confusion they proffer, but the Court declines to issue a blanket exclusion on all such evidence.

For all of the foregoing reasons, plaintiff's motions in limine are GRANTED in part and DENIED in part.

Dated this 12th day of July, 2017.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge