UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
ISHOW.COM, INC.,  )  No. C15-1550RSL
 )
 Plaintiff, )
 v. )
 ) ORDER GRANTING IN PART
LENNAR CORPORATION, *et al.*, ) DEFENDANTS' MOTIONS IN
 ) LIMINE
 Defendants. )
_____)

This matter comes before the Court on defendants' corrected "Motions in Limine." Dkt. # 82-1. Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

**(1) Trademark Registrations**

Defendants seek to exclude from evidence documents related to plaintiff's trademark registration on the grounds that the evidence will confuse the jury regarding plaintiff's right to use the mark in the residential homebuilding and financing markets. Plaintiff's common law claim is based on the natural expansion of its business – and the use of its registered mark – into

---

[1] The Court GRANTS defendants' unopposed request for leave to file an over-length motion. Dkt. # 62. Plaintiff's request to strike and/or for sanctions (Dkt. # 80 at 8) is DENIED.

The issues raised can be decided on the papers submitted. The parties' requests for oral argument are DENIED.

ORDER GRANTING IN PART
DEFENDANTS' MOTIONS IN LIMINE

a new market. The trademark registration is relevant to an evaluation of both priority and the validity/strength of the mark. It not only provides evidence of dates of use in interstate commerce, but also supports plaintiff's claim that the mark is inherently distinctive. The jury will be instructed that the registration of the mark for use in the product demonstration industry does not give rise to a presumption of validity in the new market, thereby reducing any chance of jury confusion.

**(2) Evidence of Design or Logo Mark**

Plaintiff's common law trademark claim is based on its first use of the name and mark NEXTGEN. The Amended Complaint (Dkt. # 26) contains no allegations or claims regarding a design or logo associated with that word mark. Defendants could not reasonably have anticipated a claim based on their house within a house logo or any other drawing that may have accompanied the word mark at one time or another. This case is distinguishable from AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979), where the issue was whether two non-identical word marks were confusingly similar. In that context, courts consider how those marks are presented to consumers – script, size, color, etc. – to see if any differences in the words are ameliorated or highlighted by their graphic representation. In Sleekcraft, for example, the competing marks were "Sleekcraft" and "Slickcraft." The court evaluated not only the letters that made up the words, but also the way the words were presented in marketing materials. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 351 (9th Cir. 1979). In this case, the marks are similar on their face, and the sight, sound, and meaning of the words is identical with the exception of a space between two letters. Evidence of extraneous design or logo marks is not relevant to determining whether the marks at issue are confusingly similar.

That having been said, plaintiff may be able to use evidence regarding the design or logo it was using when defendants adopted the NEXT GEN mark to show that defendants were copying plaintiff's intellectual property and knowingly confusing customers. Design and logo

ORDER GRANTING IN PART
DEFENDANTS' MOTIONS IN LIMINE            -2-

evidence may, therefore, be admissible depending on the purpose for which it is offered.

**(3) Post-September 2011 Secondary Meaning Evidence**

Defendants seek to exclude evidence or argument regarding plaintiff's sales, advertising, or business activities after September 2011 if offered for the purpose of demonstrating that plaintiff's mark had acquired secondary meaning. If the only issue in the case were whether secondary meaning had been established as of a particular date, actions and events occurring after that date would have minimal relevance. That is not the only issue, however. As trial is currently set to unfold, the jury will hear all of the evidence regarding distinctiveness and likelihood of confusion before it will be asked to determine whether plaintiff's mark is suggestive or merely descriptive. Because post-September 2011 activities may be relevant to evaluating the strength of the mark in both the priority and infringement contexts, pretrial exclusion of the evidence would be inappropriate.[2]

**(4) Evidence of Plaintiff's Post-September 2011 Homebuilding Activities**

The jury will be asked to decide whether consumers in September 2011 would perceive residential homebuilding and financial services to be a natural expansion of plaintiff's demonstration home and product placement activities. Evidence regarding plaintiff's September 2011 plans for the future and/or its future building endeavors are of marginal relevance to this issue. The evidence is, however, relevant to determining likelihood of confusion for infringement, rather than priority, purposes.

**(5) Foreign Activities**

For purposes of the priority and infringement analyses, the consumers whose perceptions matter are those in the United States. Defendants seek to exclude from evidence several videos that were filmed in Canada and directed to Canadian consumers as well as portions of plaintiff's

---

[2] Until recently, the parties litigated this case as if the priority determination would also resolve the infringement issue. It now appears that defendants intend to litigate infringement separately.

ORDER GRANTING IN PART
DEFENDANTS' MOTIONS IN LIMINE          -3-

1 website touting a development in Canada. The website, in its entirety, is readily available to US
2 consumers, and its pre-September 2011 contents would both shape consumers' perception of
3 plaintiff's zone of natural expansion and inform the infringement analysis. Plaintiff has not,
4 however, provided a foundation for the promotional videos. If they were displayed only in
5 Canada, they could have no impact on the consumers in this country. Nor would plaintiff's
6 marketing in Canada support a domestic infringement claim.

7 The cases on which plaintiff relies involved issues of subject matter jurisdiction and are
8 distinguishable. In <u>Trader Joe's Company v. Hallatt</u>, 835 F.3d 960, 969-70 (9th Cir. 2016), the
9 defendant engaged in the unauthorized resale of Trader Joe's products in Canada, without proper
10 quality control measures. The risk that Trader Joe's reputation (and the value of its mark) would
11 suffer if adulterated goods sold in Canada caused a food-born illness was deemed a sufficient
12 effect on American commerce to be actionable under the Lanham Act. In <u>Wells Fargo & Co. v.
13 Wells Fargo Express Co.</u>, 556 F.2d 406, 428 (9th Cir. 1977), the Ninth Circuit found that the
14 Lanham Act's extraterritorial reach "should be gauged not so much by the locus of the activity
15 sought to be reached as the district court below held, . . . as by the nature of its effect on that
16 commerce which Congress may regulate." The matter was remanded to determine whether
17 defendant's foreign activities had an effect on American commerce. In this case, subject matter
18 jurisdiction is not an issue. Rather, the Court must evaluate whether plaintiff's foreign activities
19 are relevant to the claims that are properly before it. Based on the existing record, plaintiff's
20 production and dissemination of videos in Canada have no impact on the consuming public in
21 the United States and are simply irrelevant.

22 **(6) Evidence or Argument Regarding Dismissed Counterclaims**

23 Defendants' unopposed motion for leave to dismiss their counterclaims (Dkt. # 66) is
24 GRANTED. Plaintiff may nevertheless rely on the counterclaims to the extent defendant

25
26

1 attempts to dispute facts that were previously admitted.[3] In the circumstances presented here, the
2 pleadings cannot reasonably be read to include an admission that consumers would be confused
3 by defendants' use of the NEXT GEN mark in the residential homebuilding and financial service
4 markets when they first entered the market in September 2011. Defendants have, however,
5 admitted that there was a likelihood of consumer confusion once both parties entered the
6 residential homebuilding market. Thus, if plaintiff is able to establish the priority of its mark in
7 the related market, the now-withdrawn counterclaims may well be used as an admission that
8 likelihood of confusion is established for infringement purposes.

**(7) Evidence of Actual Confusion**

Plaintiff intends to offer into evidence three emails Paul Barnett received to show actual confusion in the marketplace. Defendants argue that the emails are inadmissible hearsay and are irrelevant. Plaintiff clearly intends to rely on the emails for the truth of at least some of the matters asserted therein (such as the fact that Ms. Stein is a relator and that Mr. Maples had recently walked through a home in Mesa, AZ), and one could argue that none of the exceptions to the hearsay rule applies. The Ninth Circuit, however, has been willing to accept testimony from corporate witnesses summarizing third-party statements indicating confusion. See Lahoti v. Vericheck, Inc., 636 F.3d 501, 509 (9th Cir. 2011) (finding the testimony of two employees regarding telephone calls from consumers confused by competing websites not hearsay). The Lahoti court noted "no concern" about summary evidence of out-of-court statements and their contents. Id. at 509 n.4. In this case, the evidence is more trustworthy than that which was of "no concern" in Lahoti: at least we know exactly what the out-of-court declarants said and do not have to rely on Mr. Barnett to summarize their expressions of confusion. Although strict

---

[3] Admissions in a pleading are considered judicial admissions and conclusively bind the party who made them. Such admissions have the effect of withdrawing a fact from dispute and dispensing with the need for proof of that fact. In re Barker, 839 F.3d 1189, 1195 (9th Cir. 2016) (quoting Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988)).

ORDER GRANTING IN PART
DEFENDANTS' MOTIONS IN LIMINE            -5-

application of the hearsay rules would likely result in a finding of inadmissibility, the Court is not free to ignore the Ninth Circuit and will adopt a rule that, in trademark cases, a litigant may introduce evidence of out-of-court statements made to the party in order to show actual confusion.

Defendants' relevance argument has some merit, but does not warrant exclusion. At least two of the emails plaintiff intends to offer are ambiguous as to whether the author was confused regarding the source of the home/development that was the subject of the inquiry. The authors are also situated differently than home buyers, with two of them being vendors in the demonstration home market who would likely experience plaintiff's goods and advertising in a way that was significantly different than the average home buyer. Having declined to call the authors as witnesses, plaintiff may not resolve the ambiguities or evidentiary gaps by having Mr. Barnett testify regarding his own impressions of what the authors meant, how the messages should be interpreted, or how similar the authors are to the relevant customers. Mr. Barnett may testify that he received the emails and can identify the senders and any factual information he has regarding the home/development that is the subject of the message. It will be up to the jury to determine whether one or more of the messages evince actual confusion on the part of actual consumers in the relevant time frame.

**(8) Evidence of Actual Damages**

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), plaintiff was required to provide "a computation of each category of damages claimed" and to make available "the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based . . . ." Plaintiff argues that its production of documents quantifying the investment it made in its mark and the identification of two witnesses who will testify regarding injury to its reputation satisfies this obligation. It does not. At no point in this litigation did plaintiff quantify – even roughly – the amount of actual damages it suffered as a result of the

ORDER GRANTING IN PART
DEFENDANTS' MOTIONS IN LIMINE         -6-

alleged infringement. Making certain documents available and promising that someone will testify regarding damages is not a "computation" and fails to apprise defendants of the extent of their exposure in this case. Having failed to show that the lack of disclosure was substantially justified or harmless, plaintiff will not be permitted to offer evidence of actual damages.

**(9) Evidence of Settlement Communications**

Evidence of compromise offers and settlement negotiations between the parties are generally inadmissible under Fed. R. Ev. 408. Depending on what the evidence is, it may be admissible for the purpose of establishing the willfulness of defendants' alleged infringement, however. The Court will resolve evidentiary objections based on Rule 408 in the context of the questions asked at trial.

**(10) Evidence and Argument Regarding the Relative Size of the Parties**

Plaintiff will not be permitted to introduce evidence of defendants' financial condition or the relative size of the parties in an effort to obtain an oversized damage award based on passion or prejudice. Evidence that reveals the parties' relative markets and reach will undoubtedly be introduced for a number of permissible reasons, however, including consideration of the strength of the marks, the proximity of the goods, marketing channels used, and likelihood of expansion. In addition, evidence and argument that tends toward a "David and Goliath" narrative may be relevant to the issue of willfulness to explain why defendants were willing to adopt a contested mark for their new venture over plaintiff's affirmative objections.

**(11) Evidence Regarding Donations of Demonstration Homes**

This is, and always has been, a natural expansion case. Plaintiff's pre-September 2011 home donations were nominal, sporadic, and token uses of its mark in the residential real estate development and financing services market and do not establish priority in that field. Evidence of the donations is, however, relevant to a determination of whether expansion into that market was likely at the time defendants began using their competing mark.

1 | For all of the foregoing reasons, defendants' motions in limine (Dkt. # 70 and # 82-1) are GRANTED in part and DENIED in part. With regards to many of defendants' motions, the evidence they seek to exclude is relevant to an issue remaining in the case: its admissibility will have to be determined at the time it is offered at trial. Defendants' unopposed motions to file an over-length memorandum (Dkt. # 62) and to dismiss their counterclaims (Dkt. # 66) are GRANTED.

Dated this 14th day of July, 2017.

*[signature]*

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART
DEFENDANTS' MOTIONS IN LIMINE        -8-