THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ISHOW.COM, INC., | No. 2:15-cv-01550-RSL |
| Plaintiff, | **DEFENDANTS' TRIAL BRIEF** |
| v. | |
| LENNAR CORPORATION, AND LENNAR PACIFIC PROPERTIES MANAGEMENT, INC., | |
| Defendants. | |

Per the Court's Amended Order Setting Trial Date & Related Dates, Dkt. No. 54, Defendants Lennar Corporation and Lennar Pacific Properties Management, Inc. (collectively, "Lennar") submit their trial brief.

I. **INTRODUCTION**

As we embark on trial, Lennar respectfully submits that it is essential to understand what this case is about—and what it is not about. This is not a case where plaintiff claims to own a registered trademark and one of its competitors is palming off goods. Nor is it a case where plaintiff alleges to own a registered trademark and a defendant—whether competitor or not—is using a variant of plaintiff's registered mark to sow confusion among common consumers.[1] This is not even a case where plaintiff sues to enforce alleged common law trademark rights against another who is using its own alleged common law trademark in a

---

[1] iShow.com owns a federal registration for "NEXT GEN HOME EXPERIENCE" in product development, but does not own a federal registration for "NEXTGEN." iShow.com also owns a Nevada state registration for "NEXTGEN." Notably, iShow.com does not allege that Lennar has infringed either of these trademarks. Rather, iShow.com claims that Lennar infringed iShow's purported *common law* rights in NEXTGEN. *See* Dkt. 26.

DEFENDANTS' TRIAL BRIEF
2:15-cv-01550-RSL

GORDON & REES LLP
121 SW Morrison, Suite 1575
Portland, OR 97204
Ph:(503) 227-8269 Fax: (503) 616-3600

Page 1

1110830/33529001v.1

1  manner the plaintiff alleges will confuse consumers.  Rather, here, iShow.com, Inc.
2  ("iShow.com") professes to own common law trademark rights in one business—product
3  demonstration—and contends it was likely to "expand" into an entirely different second
4  business—residential real estate development and financial services; and, therefore, defendant
5  Lennar should be blocked from using its mark in residential real estate and financial services
6  because plaintiff has "priority" in that "expanded" zone.  That is a tall order.

7  But what truly makes this case exceptional is that, in addition to the common law and
8  natural expansion elements, the <u>defendant</u>, Lennar, owns federal trademark registrations for the
9  identical marks in question (NEXT GEN and NEXT GEN - HOME WITHIN A HOME) and in
10  the specific business in question (residential real estate development and financial services).
11  iShow.com initially tried to stop Lennar from obtaining its registrations but iShow.com
12  voluntarily dismissed its opposition.  The United States Patent and Trademark Office
13  ("USPTO") issued registrations to Lennar which, under the law, entitle Lennar to a
14  <u>presumption</u> of "validity" and "exclusivity" for NEXT GEN and NEXT GEN - HOME
15  WITHIN A HOME in residential real estate and financial services. 15 U.S.C. § 1057(b) ("A
16  certificate of registration of a mark upon the principal register provided by this chapter shall be
17  prima facie evidence of the validity of the registered mark and of the registration of the mark,
18  of the owner's ownership of the mark, and of the owner's exclusive right to use the registered
19  mark in commerce on or in connection with the goods or services specified in the certificate,
20  subject to any conditions or limitations stated in the certificate.").

21  Armed with registrations and the imprimatur of the federal government, defendant
22  proceeded to build, market, and sell homes to homebuyers bearing the NEXT GEN mark, and
23  achieve tremendous success.  Four years.  18 States.  More than 4200 homes.  Plaintiff never
24  complained—it never opposed defendant's second registration; it never sought to cancel
25  defendant's registrations; it never filed a lawsuit; it never sent a cease and desist letter; it never
26  even sent an informal letter or email.  Then, suddenly, after four years, plaintiff sued defendant
27  for infringement—*willful infringement no less*—and claims not only that defendant must now

28  DEFENDANTS' TRIAL BRIEF                                                                              GORDON & REES LLP
    2:15-cv-01550-RSL                                                                     121 SW Morrison, Suite 1575
                                                                                                      Portland, OR 97204
                                                                            Ph:(503) 227-8269 Fax: (503) 616-3600

stop using the mark it had been using for years, but also that plaintiff is entitled to the profits defendant earned by selling the homes.

A plaintiff seeking to enforce common law trademark rights in an "expanded zone" and against a defendant who applied for and received federal trademark registration for the mark and goods in question has an exceedingly high burden of proof and persuasion. Lennar is not aware of any case from any jurisdiction with such facts where a defendant was found to have acted willfully or to have been required to disgorge any profits whatsoever. iShow.com cites none.

That burden is insurmountable when the plaintiff also must prove, by clear and convincing evidence, that the defendant acted willfully and where the plaintiff had full knowledge of defendant's activities and waited four years before filing suit.

## II.     FACTUAL BACKGROUND

Lennar is a homebuilder engaged in the business of buying and developing land, obtaining zoning, permits, and entitlements, and constructing and selling residential houses to individuals and families.

iShow.com does not and has never done any of those things. Indeed, iShow.com admits that it has never sold a home directly to a home buyer, and any homes sold under its purported mark were first used as demonstration homes. Dkt. 32, p. 13, lns. 10-12.

Instead, iShow.com is in the product demonstration business. It provides advertising and marketing services to product manufacturers, designers, architects, and building-material suppliers. iShow.com claims to have started using the word NEXTGEN in connection with providing advertising and marketing services in 2003. iShow.com does not own and does not claim to own a federal trademark registration for NEXTGEN (or NEXT GEN) in any class of goods and certainly not in residential real estate and financial services.

In mid-2011, Lennar launched a targeted new home product. The product included a unique floorplan designed for two living spaces under one roof, or a "home within a home." Lennar planned to market the product to families that wanted to reside with multiple

DEFENDANTS' TRIAL BRIEF
2:15-cv-01550-RSL

GORDON & REES LLP
121 SW Morrison, Suite 1575
Portland, OR 97204
Ph:(503) 227-8269 Fax: (503) 616-3600

Page 3

1110830/33529001v.1

generations under one roof.  Lennar hired three separate outside marketing firms to create a consistent marketing message for the product.  After considering more than a dozen different creative concepts, Lennar settled on Lennar's NEXT GEN - The Home Within a Home, and set a strategic launch of the product in the autumn of 2011 in Gilbert, Arizona.

On August 16, 2011, Lennar applied to the USPTO to register two word marks and a design mark in two specific "classes of goods," Classes 036 and 037.  Lennar's trademark applications sought registration for use of the marks on real estate management, brokering, and financial services, and real estate development, and construction of residential communities and individual residences, respectively.

| NEXT GEN | HOME WITHIN A HOME |  |

In early October 2011, Lennar sold its first NEXT GEN home.

On January 17, 2012, the USPTO published Lennar's applications for NEXT GEN, HOME WITHIN A HOME, and the design mark for opposition. iShow.com filed an opposition to Lennar's application for NEXT GEN on March 19, 2012, claiming that iShow.com owned common law rights to use NEXT GEN in the homebuilding space and that Lennar's use of the term was likely to cause confusion.  (iShow.com never filed an opposition to the design mark or HOME WITHIN A HOME).  Five months later, on August 31, 2012, iShow.com voluntarily withdrew its opposition with prejudice.  The USPTO dismissed the opposition the next week.  Lennar's applications for NEXT GEN product all were perfected and registered on the Principal Register.[2]

---

[2] Lennar's trademark registrations for the product were registered on October 16, 2012 ("HOME WITHIN A HOME") and February 5, 2013 (the design mark and "NEXT GEN").  After iShow.com voluntarily dismissed its opposition proceeding in August 2012, Lennar subsequently applied for and received two additional registrations for "NEXT GEN - THE HOME WITHIN A HOME" (registered May 28, 2013) and "IT'S LIKE GETTING TWO HOMES WITH ONE PAYMENT" (registered May 28, 2013).  iShow.com never opposed Lennar's application for "NEXT GEN - THE HOME WITHIN A HOME."

DEFENDANTS' TRIAL BRIEF
2:15-cv-01550-RSL

GORDON & REES LLP
121 SW Morrison, Suite 1575
Portland, OR 97204
Ph:(503) 227-8269 Fax: (503) 616-3600

Page 4
1110830/33529001v.1

From September 2011 through mid-August 2016, Lennar sold over 4,200 homes bearing the NEXT GEN trademark in 14 states. Gross sales from these NEXT GEN Homes exceed $1.77 billion.

## III. LEGAL AND FACTUAL ISSUES

Lennar anticipates the following issues will be relevant in determining the outcome of this case. Certainly other issues have been addressed and will be decided at trial. What follows is Lennar's best estimate of key or pivotal issues that may arise. Lennar reserves all rights to raise objections, make arguments, and seek rulings concerning issues that are (and are not) addressed in this document, which is intended to help guide the Court but does not set forth every conceivable matter that may arise.

### A. Pretrial Issues

Some of these issues have been the subject of pre-trial briefing decided by the Court.

1. Claim Preclusion. iShow.com's second cause of action for trademark infringement is barred by claim preclusion because it voluntarily dismissed with prejudice its USPTO opposition to Lennar's NEXT GEN registration. Claim preclusion "bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986). The elements of claim preclusion are: (1) identity or privity between parties; (2) a final judgment on the merits; and, (3) an identity of claims. *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1141 (9th Cir. 2013). Lennar asserts that the elements of claim preclusion are met in this case. *Weekes v. Atl. Nat'l Ins. Co.*, 370 F.2d 264, 268 (9th Cir. 1966) ("Dismissal with prejudice is an adjudication on the merits, in favor of the defendant."); *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) ("The phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.'"); *see also V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*, 2017 WL 616459, *4-6 (E.D. Cal. Feb. 14, 2017); *Buzz Seating, Inc. v. Encore Seating, Inc.*, 2017 WL 2619340, at *7 (S.D. Ohio June 16, 2017) ("The Court concludes that [plaintiff's infringement claim] was or could have been litigated in

DEFENDANTS' TRIAL BRIEF  
2:15-cv-01550-RSL  

GORDON & REES LLP  
121 SW Morrison, Suite 1575  
Portland, OR 97204  
Ph:(503) 227-8269 Fax: (503) 616-3600  

Page 5  
1110830/33529001v.1

the [TTAB] administrative proceedings.  The elements of claim preclusion are satisfied."); *cf. B&B Hardware, Inc. v. Hargis Industries, Inc.*, 135 S.Ct. 1293, 1305-10 (2015) (holding TTAB decisions may be grounds for collateral estoppel and noting that nothing in the Lanham Act bars administrative preclusion).

    2. <u>Laches</u>.  iShow.com's first and second causes of action are barred by the equitable doctrine of laches.  Lennar alleged this defense in its Answer.  Dkt. 27 at 5.  In its March 17, 2017 Order, the Court addressed the issue of laches, indicating that this issue may be "dispositive" of the case, and that the Court's analysis will be guided by a determination of whether Washington's three-year statute of limitations or Nevada's four-year statute of limitations applies for purposes of measuring iShow.com's unreasonable delay in filing suit. Dkt. 53 at 8.  However, Washington's three-year statute of limitations must apply to iShow.com's claims.

    a. *Washington's three-year statute of limitations applies*.

  As a matter of law, Washington's three-year statute of limitations applies in this case— which means that there is a strong presumption that iShow.com's claims are barred by laches. *See* Dkt. 53 at 3 ("This suit was not filed until September 29, 2015, more than four years [after iShow.com knew of Lennar's proposed use of the NEXT GEN mark]"); *DirecTV, Inc. v. Webb*, 545 F.3d 837, 847 (9th Cir. 2008) (where a "federal statute does not have its own statute of limitations, federal courts are directed to borrow a period from ***the forum state's*** analogous state law as a matter of interstitial fashioning of remedial details under the respective substantive federal statute") (emphasis added and internal citations omitted); *Logan Farms v. HBH, Inc. DE*, 282 F. Supp. 2d 776, 790 (S.D. Ohio 2003) ("There is a strong presumption of laches where the analogous statute of limitations has elapsed . . . .  The general rule is that where Congress has not provided a statute of limitations, ***the trial court should borrow the statute of limitations from the forum state***.") (emphasis added and internal citations omitted); *see also Jarrow Formulas v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002) (California federal court borrowed California's statute of limitation); *Miller v. Glenn Miller Productions,*

DEFENDANTS' TRIAL BRIEF
2:15-cv-01550-RSL

GORDON & REES LLP
121 SW Morrison, Suite 1575
Portland, OR 97204
Ph:(503) 227-8269 Fax: (503) 616-3600

Page 6
1110830/33529001v.1

1  *Inc.*, 454 F.3d 975, 997 (9th Cir. 2006) (same); *Reno Air Racing Ass'n., Inc. v. McCord*, 452
2  F.3d 1126, 1138-39 (9th Cir. 2006) (Nevada federal court borrowed Nevada statute of
3  limitation); *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d
4  1102, 1108 (9th Cir. 2006) (Oregon federal court borrowed Oregon statute of limitation);
5  *Bikila v. Vibram USA Inc.*, 218 F. Supp. 3d 1206, 1213 (W.D. Wash. 2016) (borrowing
6  Washington statute of limitation in Lanham Act case); *Ormsby v. Barrett*, 2008 WL 53119, at
7  *2 (W.D. Wash. Jan. 2, 2008) (same).

8      In fact, although iShow.com has now reversed course, it previously argued to the Court
9  that Washington's statute of limitations law applies in this case. *See* Dkt. 14 at 7-8 (arguing
10 against laches and noting that "Washington . . . has a three-year limitations period").
11 iShow.com, therefore, is judicially estopped from arguing the opposite now.

12     Even under the traditional "conflict of laws" analysis (which is contrary to law under
13 these circumstances), Washington law still applies. Washington uses the "most significant
14 relationship" test for its choice-of-laws analysis. *See Johnson v. Spider Staging Corp.*, 555
15 P.2d 997, 1000 (Wash. 1976) (stating that Washington law is "in accord" with the Restatement
16 (Second) of Conflict of Laws §§ 6, 145 (1971)). To resolve the conflict, the Court should look
17 at the following factors:  (1) the place where the injury occurred; (2) the place where the
18 conduct causing the injury occurred; (3) the . . . place of incorporation and place of business of
19 the parties; and (4) the place where the relationship, if any, between the parties is centered.
20 Restatement (Second) of Conflict of Laws § 145(2).

21     By iShow.com's own admission, then, Washington law has the most significant
22 contacts with this case. *See, e.g.*, Dkt. # 14, pp. 7-8 (arguing for application of Washington's
23 statute of limitations); Dkt. # 26, ¶¶ 1, 6, and 7 (admitting that iShow.com is incorporated and
24 has its principal place of business in Washington, its injury occurred in Washington, and that
25 Lennar directed its conduct toward iShow.com in Washington).

28 DEFENDANTS' TRIAL BRIEF  
   2:15-cv-01550-RSL

GORDON & REES LLP  
121 SW Morrison, Suite 1575  
Portland, OR 97204  
Ph:(503) 227-8269 Fax: (503) 616-3600

Page 7

1110830/33529001v.1

1            b.     *iShow.com is not entitled to equitable tolling.*

2       Regardless of which state's law applies, however, iShow.com is not entitled to an equitable tolling of the statute of limitations for the five months during which the USPTO opposition proceeding between the parties was pending, because iShow.com subsequently dismissed its opposition with prejudice. *Lehman v. United States*, 154 F.3d 1010, 1012, 1015-17 (9th Cir. 1998) (equitable tolling "is not available to avoid the consequences of one's own negligence"; refusing to grant equitable tolling even where dismissal was made without prejudice); *cf. Millay v. Cam*, 955 P.2d 791, 797 (Wash. 1998) (*en banc*) (tolling only appropriate where defendant exercised bad faith, deception, or false assurances, and plaintiff was diligent); *Spilsbury v. U.S. Specialty Ins. Co.*, 2015 WL 476228, at *4 (D. Nev. Feb. 4, 2015) (NV law; tolling is only applied sparingly and where plaintiff was diligent).

           c.     *iShow.com's delay was between September 16, 2011, and June 22, 2016.*

      iShow.com's delay should be measured not between September 2011 and September 29, 2015, when iShow.com filed its *declaratory relief* claim, Dkt. 1, but between September 2011 and June 22, 2016, which is the first time that iShow.com asserted a trademark infringement claim against Lennar, Dkt. 26. Lennar will argue at trial that the appropriate period of delay is <u>four (4) years and nine (9) months</u>, the period between September 16, 2011 and June 22, 2016.

           d.     *iShow.com bears the burden of overcoming the presumption of laches.*

      Because iShow.com filed its infringement action after the analogous state statute of limitations had run, then a presumption of laches applies. *See* Dkt. 53 at 3; *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835-37 (9th Cir. 2002) (because some "part of the claimed wrongful conduct occurred beyond the limitations period[,]" the presumption of laches is triggered). The presumption of laches shifts the burden to iShow.com to prove excusable delay, lack of prejudice, or some other reason why laches should not apply. *See, e.g., Cunningham v. Interlake S.S. Co.*, 567 F.3d 758, 762 (6th Cir. 2009); *Black Diamond Sportswear, Inc., v. Black Diamond Equip., Ltd.*, 84 U.S.P.Q.2d (BNA) 1758, 1760 (2d Cir.

DEFENDANTS' TRIAL BRIEF            GORDON & REES LLP
2:15-cv-01550-RSL            121 SW Morrison, Suite 1575
           Portland, OR 97204
           Ph:(503) 227-8269 Fax: (503) 616-3600

Page 8

1110830/33529001v.1

2007) *citing Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996); *ATM Express, Inc. v. ATM Express, Inc.*, 2009 WL 2973034, at *3 (S.D. Cal. Sept. 11, 2009).

       3.    <u>Estoppel by Acquiescence</u>.  iShow.com's first and second causes of action are barred by the doctrine of estoppel by acquiescence. *See Golden West Brewing Co. v. Milonas & Sons, Inc.*, 104 F.2d 880, 882 (9th Cir. 1939) (upholding trial court's finding of acquiescence where plaintiff first filed objection to defendant's application for trademark registration, later withdrew the objection without prejudice, and subsequently sued defendant over the mark three years later).  Lennar alleged estoppel in its Answer.  Dkt. 27 at 5.  Lennar asserts that the elements of estoppel by acquiescence are satisfied in this case. *E & J Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994) ("Estoppel by acquiescence" is comprised of the two laches elements plus "affirmative conduct inducing the belief that [plaintiff] has abandoned its claim against the alleged infringer" and "detrimental reliance").  Dkt. 35, pp. 15-16 (arguing iShow's withdrawal of its opposition and noting that Lennar's investment in NEXT GEN has increased following its registration of its marks).

    iShow.com argues that Lennar did not plead estoppel by acquiescence.  That is wrong.  Lennar's second affirmative defense pleads both laches and estoppel, which includes estoppel by acquiescence.  As Professor McCarthy has explained: "To preserve some semantic sanity in the law, it is appropriate to reserve the word 'acquiescence' for use only in those cases where the trademark owner, by affirmative word or deed, conveys its implied consent to another.  That is, laches denotes a merely passive consent, while acquiescence implies active consent.  *This results in two separate legal categories: 'estoppel by laches' as distinct from 'estoppel by acquiescence.*'"  6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31.41 (emphasis added).[3]

       4.    <u>Motion to Dismiss Counterclaims</u>.  Lennar filed a motion for leave to dismiss with prejudice its counterclaims, and that motion was noted for consideration on July 14, 2017.  Dkt. 66.  iShow.com filed a response, indicating that it did not oppose Lennar's

DEFENDANTS' TRIAL BRIEF  
2:15-cv-01550-RSL

GORDON & REES LLP  
121 SW Morrison, Suite 1575  
Portland, OR 97204  
Ph:(503) 227-8269 Fax: (503) 616-3600

Page 9  
1110830/33529001v.1

1   motion, but requested that the Court condition the dismissal upon various "findings." Dkt. 90.

2   On July 14, 2017, the noting date, this Court dismissed Lennar's counterclaims, but indicated

3   that Lennar's Counterclaims "admitted that there was a likelihood of consumer confusion once

4   both parties entered the residential homebuilding market." Dkt. 93.  Lennar filed its Reply

5   later on July 14, 2017, seeking clarification of the Court's order and asking the Court to

6   consider Lennar's pleadings under Fed. R. Civ. P. 8 and *Spin Master, Ltd. v. Zobmondo*

7   *Entm't, LLC*, 2012 WL 8134014 (C.D. Cal. July 6, 2012).

8          5.     <u>Testimony of James Brown</u>.  Lennar objects to and has moved to exclude

9   the testimony of James Brown.  iShow.com did not identify Mr. Brown on its initial

10  disclosures.  Dkt. 79-2 at 86-89 (iShow.com's Initial Disclosures).  iShow.com did not

11  supplement its disclosures to add Mr. Brown as a trial witness at any point before the close of

12  discovery.  iShow.com, meanwhile, for those exact reasons, successfully moved the Court to

13  exclude Lennar's witnesses from testifying at trial. Dkt. 64 at 6-7 (iShow.com's Motion *in*

14  *Limine* No. 1).  Based on the Court's order granting iShow.com's motion *in limine*, Dkt. 91 at

15  2-3, Mr. Brown must be excluded from testifying at trial.

16      **B.     <u>Liability</u>**

17          In addition to the legal issues set forth above, which are also relevant to liability and

18  incorporated as if fully set forth herein, the jury will be asked to decide the category of

19  distinctiveness of iShow.com's purported NEXTGEN mark, whether iShow.com's use of

20  NEXTGEN had acquired secondary meaning in the minds of consumers by September of

21  2011, and whether there is a likelihood of confusion between Lennar's registered marks and

22  iShow.com's purported common law trademark.

23          1.     <u>iShow.com's NEXTGEN word mark is not distinctive and, thus, not valid or

24  protectable.</u>  A threshold question is whether iShow.com's mark is entitled to protection.[4]  To

25

---

[4] This determination can be made by the Court as a matter of law.  *See U.S. Gold & Silver Invest., Inc. v. Dir., U.S. Mint*, 682 F. Supp. 484, 487 (D. Or. 1987) (a mark's status "is a question of law for the Court"); *Japan Telecom, Inc. v. Japan Telecom Am.*, 287 F.3d 866, 872 (9th Cir. 2002) (finding mark was descriptive as a matter of law); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 912 (9th Cir.

28  DEFENDANTS' TRIAL BRIEF                                      GORDON & REES LLP
    2:15-cv-01550-RSL                                            121 SW Morrison, Suite 1575
                                                                 Portland, OR 97204
                                                                 Ph:(503) 227-8269 Fax: (503) 616-3600
    Page 10
    1110830/33529001v.1

be protectable, there must be a finding that NEXTGEN is either inherently distinctive, or has become inherently distinctive through the acquisition of secondary meaning. iShow.com's use of NEXTGEN is not inherently distinctive. Therefore, at best, iShow.com's use of NEXTGEN is descriptive.

2. <u>iShow.com must show secondary meaning by August 2011</u>. If the jury or the Court concludes that iShow.com's mark is merely descriptive, to succeed on its priority and infringement claims, iShow.com must demonstrate that its mark had acquired secondary meaning by August 2011, when Lennar began using the mark in commerce. To demonstrate that its mark had acquired secondary meaning, iShow.com must prove that a "substantial segment" of the "purchasing public" associates the NEXTGEN mark "with a single source of the product[,]" rather than just the product itself. *See Levi Strauss & Co. v. Blue Bell, Inc.* 778 F.2d 1352, 1354 (9th Cir. 1985). iShow.com has presented no evidence that its purported NEXTGEN mark attained secondary meaning in the minds of a substantial segment of the home buying public. iShow.com's failure to produce or obtain a consumer survey gives rise to a presumption that the results of such a survey would have been unfavorable. *See Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 583 (D.N.J. 1985) (failure to introduce survey evidence supports negative inference); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989) ("An expert survey of purchasers can provide the most persuasive evidence of secondary meaning.").

3. <u>iShow.com was not substantially likely to expand from product demonstration into residential real estate and financial services</u>. Because this is a "priority" and "natural expansion" case, iShow.com must also show that as of 2011, when Lennar began using its NEXT GEN and NEXT GEN - HOME WITHIN A HOME trademarks in commerce, there was a strong likelihood that iShow.com would expand its business from providing advertising and marketing services to providing residential real estate development and

---

1995 (same); *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999) (same).

DEFENDANTS' TRIAL BRIEF
2:15-cv-01550-RSL

GORDON & REES LLP
121 SW Morrison, Suite 1575
Portland, OR 97204
Ph:(503) 227-8269 Fax: (503) 616-3600

Page 11

1110830/33529001v.1

1  financial services. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080, 1085 (9th Cir.
2  2005) ("[T]here is a need for a strong possibility of expansion into competing markets for this
3  factor to weigh in favor of a finding of infringement.") (internal citations and quotations
4  omitted); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992)
5  (same); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005) ("mere
6  speculation" does not constitute "concrete evidence of expansion plans"); *Brookfield*
7  *Commcn's, Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1050-51 (9th Cir. 1999) (discussing
8  likelihood of expansion in product lines ); *Carnival Brand Seafood Co. v. Carnival Brands,*
9  *Inc.*, 187 F.3d 1307, 1310-11 (11th Cir. 1999) ("natural expansion" theory "gives the
10 trademark owner protection against the use of its mark on any product or service which would
11 reasonably be thought by the buying public to come from the same source" but trademark
12 owner "cannot by the normal expansion of its business extend the use … of its mark to
13 distinctly different goods or services not comprehended by its previous use … where the result
14 would be to conflict with valuable intervening rights established by another through extensive
15 use … of the same or similar mark for like or similar goods and services") (internal citations
16 and quotations omitted); *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018,
17 1027-28 (11th Cir. 1989) ("Under common law principles, the senior user of a mark cannot
18 monopolize markets that neither his trade nor his reputation has reached.") (citations omitted).

19        4.    <u>There was no likelihood of confusion in 2011</u>.  Assuming, *arguendo*, that
20 iShow.com can show it has a protectable mark, and that it was likely to expand from product
21 demonstration into residential real estate and financial services, then it still must show a
22 likelihood of confusion between Lennar's use of its registered NEXT GEN mark and Plaintiff's
23 unregistered use of NEXTGEN.  To do so, iShow.com must introduce evidence that, analyzed
24 through the *Sleekcraft* factors, supports a finding of a likelihood of confusion as of 2011.
25 Again, iShow.com's failure to submit an expert survey on confusion gives rise to a
26 presumption that the survey would have been unfavorable to iShow.com. *Eagle Snacks*, 625 F.
27 Supp. at 583.  And, to that point, iShow.com even concedes that it has no survey and no expert.

28 DEFENDANTS' TRIAL BRIEF                                          GORDON & REES LLP
   2:15-cv-01550-RSL                                               121 SW Morrison, Suite 1575
                                                                   Portland, OR 97204
                                                                   Ph:(503) 227-8269 Fax: (503) 616-3600

Further, the totality of the evidence iShow.com intends to use to prove "actual confusion" (in the last six years) is three emails, and not one of the emails' authors will testify. None of the emails are from a home buyer and two of the three emails post-date iShow.com's filing of its Complaint. This point is critical because Lennar's relevant customers are homebuyers, who purchase family homes from Lennar as a developer and homebuilder. iShow.com's relevant customers are not homebuyers. iShow.com's relevant customers are home product and materials companies that utilize iShow.com to showcase their products at tradeshows.

5. <u>There is no likelihood of confusion now</u>. iShow.com also must prove that there is a likelihood of confusion as of today. The same factors described above are considered but from a different point in time—considering Lennar's expansive use of the mark in homebuilding.

6. <u>Lennar did not willfully infringe</u>. There will be no evidence from which a rational jury could remotely conclude that Lennar acted willfully. Under Ninth Circuit law, "willful infringement carries a connotation of deliberate intent to deceive." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993). "Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard." *Id.* (citations omitted). A trademark defendant who seeks and obtains registration for the mark in question and in the goods in question cannot be found to have acted willfully, unless there is an allegation and evidence to prove the registration was procured by fraud. *See Razor USA LLC v. Vizio, Inc.*, 2015 WL 12656941, at *6-7 (C.D. Cal. Oct. 19, 2015).

iShow.com's refrain that Lennar "knew about" iShow.com's trademark and proceeded anyway does not satisfy the heightened willfulness standard. *Fitbug Limited v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1195-96 (N.D. Cal. 2015) ("[I]n the bad faith infringement context numerous courts have found that prior knowledge of a senior user's trademark does not necessarily give rise to an inference of bad faith and may be consistent with good faith.") (citations and quotations omitted); *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 397 (2d Cir. 1995) (same); *Playtex Products, Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 166 (2d

DEFENDANTS' TRIAL BRIEF
2:15-cv-01550-RSL

GORDON & REES LLP
121 SW Morrison, Suite 1575
Portland, OR 97204
Ph:(503) 227-8269 Fax: (503) 616-3600

Page 13

1110830/33529001v.1

2004) ("Prior knowledge of a senior user's mark does not, without more, create an inference of bad faith."); *Sorensen v. WD-40 Co.*, 792 F.3d 712, 731 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 801 (2016) ("Mere knowledge of someone else's mark is insufficient to show intent to pass off" and jury "could not reasonably conclude that [defendant] copied the mark in bad faith."); *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1565 (Fed. Cir. 1987) ("[A]n inference of 'bad faith' requires something more than mere knowledge of a prior similar mark.");

### C. Profits

1. <u>No Actual Damages</u>. The Court has determined that iShow.com is not entitled to seek any form of actual damages. Dkt. 93 at 6-7 ("At no point in this litigation did plaintiff quantify - even roughly - the amount of actual damages it suffered as a result of the alleged infringement… Having failed to show that the lack of disclosure was substantially justified or harmless, plaintiff will not be permitted to offer evidence of actual damages.").

2. <u>Disgorgement of Profits</u>. iShow.com seeks disgorgement of Lennar's profits; however, iShow.com must show willfulness in order to introduce Lennar's profits. *See Stone Creek, Inc v. Omnia Italian Design, Inc.*, 2017 U.S. App. LEXIS 12393, at *11 (9th Cir. Jul. 11, 2017) (confirming that willfulness is required for disgorgement of profits); *Lindy Pen*, 982 F.2d at 1405-06; *M2 Software Inc. v. Viacom Inc.*, 223 F. App'x 653, 655 (9th Cir. 2007) (plaintiff not entitled to defendants profits because it failed to offer evidence establishing defendant's willful infringement); *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1073-74 (9th Cir. 2015) ("An award of profits 'is not automatic' upon a finding of infringement.").

3. <u>Calculation.</u> Although a finding of willful infringement is required for iShow.com to receive any of Lennar's profits, a finding of willful infringement does not automatically entitle iShow.com to receive Lennar's profits. In other words, a finding of willful infringement may support an award of profits to iShow.com, but does not require one. The decision on amount of profits, if any, is based on principles of equity—what is fair under

---

DEFENDANTS' TRIAL BRIEF
2:15-cv-01550-RSL

GORDON & REES LLP
121 SW Morrison, Suite 1575
Portland, OR 97204
Ph:(503) 227-8269 Fax: (503) 616-3600

Page 14

1110830/33529001v.1

the circumstances.  In determining the amount of profit that is fair under the circumstances, the jury considers: [a] the amount of profit Lennar earned from the sale of homes bearing the NEXT GEN mark.  Profit is determined by deducting all expenses from gross revenue; and [b] the amount of profit Lennar earned from the sale of homes bearing the NEXT GEN mark that is attributable to use of the allegedly infringing mark.  *Lindy Pen*, 982 F.2d at 1405 (noting an award of profits "is not automatic" upon a finding of infringement and "caution[ing] that the plaintiff is not entitled to a windfall.") (internal citations omitted); *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1073 (9th Cir. 2015) ("In seeking to achieve equity between the parties, the court must fashion a remedy wherein the defendant may 'not retain the fruits, if any, of unauthorized trademark use or continue that use [and the] plaintiff is not … [given] a windfall.'") (citations omitted).

    4.  <u>Equitable Discretion</u>.  The Lanham Act, 15 U.S.C. §§ 1117 and 1125 authorizes district courts to exercise their equitable discretion with respect to any remedy.

**D.**  **Advisory Jury**

This Court has decided to "try the equitable issues with an advisory jury."  The Court, however, is not bound to follow the findings of this advisory jury.  *See* Fed. R. Civ. P. 39(c)(1); *see also Rookaird v. BNSF Ry. Co.*, 2016 WL 8260464, at *9 (W.D. Wash. Sept. 2, 2016) (Lasnik, J.).

Dated:  July 19, 2017

GORDON & REES LLP

By:  *s/ Christopher E. Hawk*
  Christopher E. Hawk, WSBA No. 43307
  chawk@gordonrees.com

O'MELVENY & MYERS LLP

By:  *s/ David Marroso*
  David Marroso (*admitted pro hac vice*)
  dmarroso@omm.com

Attorneys for Defendants, LENNAR CORPORATION, AND LENNAR PACIFIC PROPERTIES MANAGEMENT, INC.

DEFENDANTS' TRIAL BRIEF
2:15-cv-01550-RSL

GORDON & REES LLP
121 SW Morrison, Suite 1575
Portland, OR 97204
Ph:(503) 227-8269 Fax: (503) 616-3600

Page 15

1110830/33749532v.1
1110830/33529001v.1